## Aul, Admx. v. Associated Transport, Inc.

*James R. Fitzgerald*, for plaintiffs.

*W. Arch Irvin, Jr.*, for defendant.

VAN DER VOORT, J., June 24, 1965.—This litigation arose from a motor vehicle accident which occurred January 4, 1952, near Oxford, N. C., and in which John Anthony Aul, his wife, and two minor children were fatally injured. Plaintiff is the mother of John Anthony Aul, and was appointed administratrix of her son's estate by the Register of Wills of Allegheny County on July 28, 1952. Suit was filed by praecipe at April term, 1953, no. 35, and the complaint was filed in February 1957.

The complaint identified plaintiff as "Administratrix of the aforesaid estate under the Survival Act of Pennsylvania and as Trustee Ad Litem for herself and her husband as next of kin of the decedent entitled to recover under the Wrongful Death Act of Pennsylvania". It averred, erroneously, that the accident occurred in South Carolina.

The case was scheduled for trial on June 22, 1964. After a jury was selected, at a discussion in chambers both counsel conceded that any cause of action and the party in whom any right was vested were controlled by the North Carolina Wrongful Death Statute. It was further conceded that no survival action was allowed by North Carolina law, and, accordingly, there was no dispute when the court granted the defendant's motion to strike the survival action. During the discussion, plaintiff offered to amend the complaint to aver that the only recovery would be under the North Carolina Death Act. At no time was any amendment to change the stated situs of the accident from South Carolina to North Carolina offered.

On June 23, 1964, the action was dismissed on motion of defendant, and the following order was entered:

"AND NOW, to-wit: June 23, 1964, upon motion of

defendant to dismiss for failure to state a claim upon which relief can be granted, juror withdrawn and action dismissed with exception noted to plaintiff".

Plaintiff filed a motion for a new trial on June 25, 1964 and a motion to remove order dismissing action on June 26, 1964. Oral arguments on the motions were had before the court en banc on November 2, 1964, and briefs were submitted. After the arguments, and prior to the handing down of a decision, the court was asked, among other things, to consider the effect on this case of the recent decision of the Supreme Court of Pennsylvania in Griffith v. United Air Lines, Inc., 416 Pa. 1, October 14, 1964. Before proceeding further, we will discuss the applicability, or the lack thereof, of the court's decision in the Griffith case to the case at bar.

Griffith's decedent, a Pennsylvania domiciliary, purchased a ticket from United Airlines, Inc., in Philadelphia for a flight from Philadelphia to Phoenix, Ariz., and return. The plane crashed during a scheduled landing at Denver, Colo., and the crash caused the immediate death of the passenger. Under Colorado law, recovery of damages would have been minimal. In holding that decedent's executor could bring an assumpsit action in Pennsylvania, and that the provisions of Pennsylvania law would apply, the court specifically overruled the line of cases which developed the lex loci delicti doctrine. However, after discussing various theories of liability based on "significant relationships" between local laws and the parties, the court analyzed the fact situation in Griffith, and, as the basis for its decision, stated at page 24:

"Pennsylvania's interest in the amount of recovery, on the other hand is great. The relationship between decedent and United was entered into in Pennsylvania. Our Commonwealth, the domicile of decedent and his family, is vitally concerned with the administration of decedent's estate and the well-being of the surviving

dependents to the extent of granting full recovery, including expected earnings".

We find that the facts in the case at bar present a situation which is substantially different from that in Griffith. In Griffith, the parties entered into a contract in Pennsylvania; in the case at bar, there were no transactions of any kind between the parties in Pennsylvania. The Colorado statute limited the amount of recovery; there is no such limitation in the North Carolina statute. Defendant, a Delaware corporation, has a place of business in Pennsylvania and, accordingly, was amenable to process, but the vehicle involved in the fatal accident was dispatched from another terminal, and was not scheduled to pass through Pennsylvania at all. The only contact which we can find is that decedent was, and his parents are, Pennsylvania domiciliaries.

In its discussion of modern theories of tort law, the court cited, at page 15, Restatement 2d, Conflict of Laws:

"The position of the Restatement (2d), is that torts should be governed by the local law of the state which has the most significant relationship with the occurrence and the parties, and that separate rules apply to different kinds of torts. Contacts considered vital in determining the state of most significant relationship include place of injury, place of conduct, domicile of the parties, and the place where the relationship between the parties is centered. §379(2). The importance of the respective contacts is determined, in part, by considering the issues, the nature of the tort, and the purposes of the tort rules involved. §379(3). However, §379(a) of the new Restatement provides: 'In an action for a personal injury, the local law of the state where the injury occurred determines the rights and liabilities of the parties, unless some other state has a more significant relationship with the occurrence and

the parties as to the particular issue involved, in which event the local law of the latter state will govern' ".

The decision in Griffith comports with the foregoing. The facts in the case at bar, however, are lacking in sufficient "contacts" with the State of Pennsylvania to bring the issue under Pennsylvania law.

Considering next plaintiff's motion to vacate the order of court made on June 23rd and for a new trial, when the trial court entered its order in the case at bar, thereby refusing plaintiff's motion to amend the complaint, it based its decision on: (1) the fact that by eliminating the reference to the Pennsylvania Wrongful Death Act and substituting therefor the North Carolina Wrongful Death Act, plaintiff was stating a new cause of action after the statute of limitations had run, and (2) that no offer had been made to amend the stated situs of the accident.

This is a close case, and there are substantial factors supporting each position, However, after a thorough review of apposite decisions of the appellate courts, particularly those decisions handed down within the past few years, we detect a growing tendency to permit the adjudication of issues on the merits where there is no flagrant violation of procedural requirements. An example of this position is that statement of the Supreme Court of Pennsylvania in Arner v. Sokol, 373 Pa. 587, 592 (1953):

"The day of tight-rope walking in pleading when one slight mis-step on the part of the attorney plunged his client's cause into the abyss of extinction is happily gone. 'It is the consistent policy of the courts to give full opportunity to parties to plead their cause of action, if they have one, and not turn them out of court for technical errors. That is especially true if the objections refer more to the manner of pleading than to a complete lack of a cause of action. If the pleading is vague or insufficient and it appears that a clear and

adequate statement of facts can be averred, permission should be given to amend. It is always desirable to dispose of litigation on the merits, if possible. As was said in Stevens v. Smith, 310 Pa. 287, 288, 165 A. 237: "Under present day practice and procedure we will not foreclose a cause of action for defects resting more on form than want of substance" '. (Townsend v. Universal Ins. Co., 129 Pa. Superior Ct. 188.)"

In the case at bar, it is alleged by defendant that the reference to the location of the accident as South Carolina instead of North Carolina is fatal to plaintiff's cause of action, and that plaintiff failed to give notice prior to trial that he intended to rely on North Carolina law. With respect to the former, it is inconceivable to us that defendant, who operates trucks over a wide area and, presumably, has some means of ascertaining when and where accidents occur, was really misled. This is evidenced by defendant's reply to plaintiff's interrogatories, which were filed January 11, 1963, approximately 18 months before the scheduled trial date and which state, inter alia:

"10. Q. State where the accident occurred, giving:

"(a) the name of the highway upon which it occurred.

"(b) the distance from the scene of the accident to the nearest locality, giving the name of the locality and the county and state involved.

"A. (a) U. S. Route #15,

"(b) About 7½ miles from Oxford, North Carolina".

The matter of giving notice of an intention to rely on foreign law is discussed in an interesting manner in Minnick v. Scheffy, 65 D. & C. 1 (1949). Essentially, Minnick distinguished a situation in which defendant has no way of knowing which law will apply, unless he is advised, from that in which under the lex loci delicti rule (in effect at the time the opinion was writ-

ten), application of the law of the State where the tort occurred is mandatory. The court held that a pleading averring that an accident had occurred in Alabama was sufficient notice of an intent to rely on Alabama law.

As to whether pleading the Pennsylvania acts rather than those of North Carolina terminates plaintiff's cause of action, we refer to Schwab v. P. J. Oesterling & Son, Inc., 386 Pa. 388 (1956), in which the court said, among other things: ". . . it is not fundamentally essential to specify in a complaint the particular Act under which recovery is sought", absent a rule or statute requiring it. See also Commonwealth Trust Co. of Pittsburgh v. Stinebiser, 108 Pitts. L. J. 231 (1960), in which we said that when the complaint sets forth a basic cause of action, as is the case in the present litigation, an amendment changing the pleadings to show that the litigation is based on the statutes of a State other than Pennsylvania, does not constitute a new cause of action.

Plaintiff had no more than one cause of action. He could not have recovered under both the Pennsylvania and North Carolina statutes. Since the complaint states plaintiff's cause of action in its essential facts, we do not believe that defendant is prejudiced by an amendment changing a part thereof that the Supreme Court has characterized as "not fundamentally essential": Schwab, supra. See also Arner v. Sokol, supra, in which the court said, at page 591:

". . . In Miners Sav. Bank of Pittston v. Naylor et al., 342 Pa. 273, we stated: 'The tests to be applied when the question presented is whether an amended statement presents a new and different cause of action are, would a judgment bar any further action on either, does the same measure of damages support both, is the same defense open in each, and is the same measure of proof required?'

"In the instant case the answer would be 'Yes' to all the questions, and it was, therefore, error for the Court not to permit the proposed amendment".

Finally, we quote the following statement of the Supreme Court in Schaffer v. Larzelere, 410 Pa. 402, 406 (1963):

"It is the general rule that the amendment of pleadings is a matter within the wise and judicial discretion of the court below. In the absence of plain error, its action will not be reversed: Trabue v. Walsh, 318 Pa. 391, 177 A. 815 (1935). However, the right to amend should be liberally granted at any stage of the proceedings unless there is an error of law or resulting prejudice to an adverse party: Arzinger v. Baughman, 348 Pa. 84, 34 A. 2d 64 (1943); Esso Standard Oil Co. v. Taylor, 399 Pa. 324, 159 A. 2d 692 (1960). The Pennsylvania Rules of Civil Procedure have embodied the modern philosophy of jurisprudence and court procedure and allow amendments with great liberality to the end that justice by all parties may be achieved: See, Pa. R. C. P. 1033; 20 U. Pitt. Law Rev. 553 (1958); 2 Anderson, Pa. Civ. Pract., p. 535; Cucinotti v. Ortmann, 399 Pa. 26, 159 A. 2d 216 (1960)".

In accordance with the desire of courts to reach the merits of the issue and dispose of cases on that basis, we believe the order of June 23, 1964, should be set aside and plaintiff permitted to amend his complaint in the following particulars:

1. Identify the party plaintiff as administratrix by eliminating the reference to "Trustee Ad Litem".

2. Show the location of the accident as North Carolina.

3. Delete the reference to the Pennsylvania statutes.

Although the complaint left much to be desired as it was filed originally, we feel, after careful consideration, that to allow the correction of its shortcomings will not prejudice defendant's rights, and that the

inaccuracies are not of such a magnitude as to warrant the foreclosing of plaintiff's right to recovery, if she can establish her right at a trial on the merits of the case.

ORDER

And now, June 24, 1965, the order of court entered in this case on June 23, 1964, dismissing the action is hereby vacated and set aside, and a new trial is granted on condition that plaintiff amend her complaint, properly identifying herself as the party qualified to bring this suit under the statutes of the State of North Carolina, stating the correct geographic location of the place where the accident happened, and deleting from the complaint the reference to the Pennsylvania statutes, which amendments plaintiff is authorized to file within 20 days.